[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13013
_____

D.C. Docket Nos. 5:13-cv-00068-CAR, 12-51926

In re:  PHILLIP JEFFERSON BROWN,

Debtor.
_____

SANTANDER CONSUMER USA, INC.,
as assignee of Thor Credit Corp.,

Plaintiff-Appellant,

versus

PHILLIP JEFFERSON BROWN,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 27, 2014)

Before WILSON, Circuit Judge, BUCKLEW,* and LAZZARA,** District Judges.

BUCKLEW, District Judge:

Santander Consumer USA, Inc., as assignee of Thor Credit Corp. ("Santander") appeals the district court's affirmance of the bankruptcy court's order overruling Santander's objection to the confirmation of Phillip Jefferson Brown's plan under Chapter 13 of the United States Bankruptcy Code, which proposed that Brown surrender his vehicle under 11 U.S.C. § 1325(a)(5)(C) to satisfy Santander's claim. The bankruptcy court held 11 U.S.C. § 506(a)(1) and (a)(2) determined the vehicle's value and hence the amount of Santander's secured claim, which would be satisfied by Brown's surrender of the vehicle.

The issue before this Court is whether § 506(a)(2)'s valuation standard applies when a Chapter 13 debtor surrenders his vehicle under § 1325(a)(5)(C). We hold that it does, and we affirm.

## I.

We have jurisdiction because the district court's affirmance of the bankruptcy court's decision is a final appealable order. 28 U.S.C. § 158(d)(1). Brown's plan was confirmed at the time of the district court's order, which

_____

\* Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

\*\* Honorable Richard A. Lazzara, United States District Judge for the Middle District of Florida, sitting by designation.

2

definitively concluded that § 506(a)(2) governed the valuation of Brown's vehicle surrendered under § 1325(a)(5)(C). *See In re Colbourne*, No. 12-14722, 2013 WL 5789159, at *1 nn.3-4 (11th Cir. Oct. 29, 2013) (per curiam). The district court's decision is "final and ended this part of the litigation on the merits," leaving the bankruptcy court with nothing left to decide. *T & B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1375 (11th Cir. 1989).

## II.

In July 2007, Brown purchased a 37-foot 2006 Keystone Challenger recreational vehicle. Brown entered into a loan agreement secured by the recreational vehicle. In July 2012, Brown filed for Chapter 13 bankruptcy. Santander, the owner of the loan agreement, filed a proof of secured claim in the bankruptcy court for $36,587.53, the outstanding payoff balance due at the petition date. Brown's modified Chapter 13 plan proposed surrendering the vehicle in full satisfaction of Santander's claim. Santander objected to the confirmation of the plan.

At the confirmation hearing on September 27, 2012, the parties disagreed on the method for valuing Brown's vehicle.[1] Brown argued that § 506(a)(2)'s replacement value standard governed his vehicle's valuation, which in turn

---

[1] At that time, Santander had possession of the vehicle but had not sold it.

3

determined the amount of Santander's secured claim.  Brown contended that if his vehicle's replacement value exceeded his debt, surrendering his vehicle would satisfy Santander's entire claim (and his debt) under § 1325(a)(5)(C).  Santander argued that a surrendered vehicle's value should be based on its foreclosure value, not replacement value.

On December 3, 2012, the bankruptcy court overruled Santander's objection, holding that § 506(a)(2) required valuing Brown's vehicle based on its replacement value.  The bankruptcy court found that while the Supreme Court's 1997 decision in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879 (1997) supported applying a foreclosure value standard to Brown's surrendered vehicle, *Rash* preceded the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005's ("BAPCPA") addition of § 506(a)(2), which required the replacement value standard.  The court concluded Santander would have a secured claim to the extent of the vehicle's replacement value, and that Brown's surrender of the vehicle would satisfy that claim under § 1325(a)(5)(C).

Following a valuation and confirmation hearing, the bankruptcy court determined that the vehicle's replacement value at least equaled the debt and confirmed Brown's Chapter 13 plan.[2]  Santander appealed the bankruptcy court's

---

[2]  Santander challenges only the bankruptcy court's decision to apply § 506(a)(2)'s replacement value standard in this case, not the court's finding regarding the vehicle's replacement value.

4

decision to apply the replacement value standard to the district court, which rejected Santander's arguments and affirmed the bankruptcy court's decision.

## III.

"The factual findings of the bankruptcy court cannot be set aside unless they are clearly erroneous; however, conclusions of law made by either the bankruptcy court or the district court are subject to *de novo* review." *In re Graupner*, 537 F.3d 1295, 1299 (11th Cir. 2008).

## A.

Under § 1325(a)(5), a plan's treatment of an "allowed secured claim" can be confirmed if: the secured creditor accepts the plan, the debtor retains the collateral and makes payments to the creditor, or the debtor surrenders the collateral. 11 U.S.C. § 1325(a)(5)(A)-(C). In this case, Brown exercised the surrender option under § 1325(a)(5)(C).

The term "allowed secured claim" refers to § 506(a). *Rash*, 520 U.S. at 957, 117 S. Ct. at 1883 ("The value of the allowed secured claim is governed by § 506(a) of the Code."); *Graupner*, 537 F.3d at 1296. Section 506(a)(1) bifurcates a secured creditor's allowed claim into secured and unsecured portions based on the underlying collateral's value and addresses how to determine such value:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . *is a secured claim to the extent of the value* of such creditor's interest in the estate's interest in such property . . . *and is an unsecured claim* to the extent that the value of

5

such creditor's interest . . . is less than the amount of such allowed claim. *Such value shall be determined* in light of the purpose of the valuation and of the proposed *disposition or use* of such property . . . .

11 U.S.C. § 506(a)(1) (2006) (emphasis added).

In *Rash*, the debtor proposed to retain the collateral under § 1325(a)(5)(B), while valuing the collateral based on its foreclosure value. 520 U.S. at 957, 117 S. Ct. at 1883. However, the Supreme Court interpreted "disposition or use" as requiring different valuation standards depending on whether the collateral was surrendered or retained. *Id.* at 962, 117 S. Ct. at 1885. *Rash* held that the proper standard was replacement value, not foreclosure value, in the retention context. *Id.*

After *Rash*, BAPCPA added § 506(a)(2). Like § 506(a)(1)'s last sentence, § 506(a)(2) refers to § 506(a)(1)'s bifurcation provision and addresses how to determine value. Unlike § 506(a)(1), § 506(a)(2)'s scope is limited to certain cases and expressly mandates a replacement value standard:

> If the debtor is an individual in a case under chapter 7 or 13, *such value* with respect to personal property securing an allowed claim *shall be determined based on the replacement value* of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2) (2006) (emphasis added). Thus, when § 506(a)(1) and (a)(2) both apply, a creditor holding an undersecured claim would have a secured claim

6

equal to the collateral's judicially-determined replacement value and an unsecured claim to the extent the debt exceeds the collateral's replacement value.

The parties do not dispute that Brown is an individual in a Chapter 13 case with property falling within the scope of § 506(a)(2). Nevertheless, they dispute whether § 506(a)(2) applies. Santander contends § 506(a)(2)'s replacement value standard does not apply where, as here, the debtor exercises the surrender option under § 1325(a)(5)(C). Brown contends it does.

## B.

We begin with the text of the Bankruptcy Code. *In re Allied Mech. Servs., Inc.*, 885 F.2d 837, 838 (11th Cir. 1989). Section 506(a)(2)'s text—"[i]f the debtor is an individual in a case under chapter 7 or 13, such value . . . shall be determined based on the replacement value"—expressly requires applying a replacement value standard in cases falling within its ambit. And the cases that fall within the scope of § 506(a)(2)'s ambit include those involving a Chapter 13 debtor's personal property or property for personal, family, or household use—precisely the kind at issue here. Section 506(a)(2), by its plain terms, applies to this case.

We disagree with Santander's textual arguments. Santander argues that applying § 506(a)(2)'s replacement value standard when a debtor surrenders property under § 1325(a)(5)(C) would misapply *Rash* and violate § 506(a)(1)'s "disposition and use" language. Specifically, Santander contends that applying a

7

replacement value standard would ignore *Rash's* holding that different valuation standards should apply depending on the collateral's "disposition or use," with foreclosure value governing surrender and replacement value governing retention.

But Santander fails to acknowledge that *Rash* preceded BAPCPA's addition of § 506(a)(2), which expressly requires applying the replacement value standard in this case. And while § 506(a)(2)'s replacement value standard mandate seemingly contradicts § 506(a)(1)'s broader "disposition and use" valuation language, a well-established canon "of statutory construction [is] that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (internal quotation marks omitted). Here, § 506(a)(2) specifies how to value certain property in Chapter 7 and 13 cases, while § 506(a)(1) is more broadly worded and says nothing about Chapter 7 and 13 cases. When a case falls within § 506(a)(2)'s ambit, its specific requirements control. *Id*. ("The general/specific canon is . . . applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one.").

Santander's corollary argument is that § 506(a)(2) only applies to cases where the debtor exercises the retention option under § 1325(a)(5)(B). But this requires us to read a limitation into the statute that does not exist in the plain text.

8

Congress expressly limited § 506(a)(2) to certain Chapter 7 and 13 cases; it could have also limited § 506(a)(2) to cases where the debtor retains or "uses" the collateral.  Congress did not, and neither will we.

Santander also asserts that § 506(a)(2) only applies to retained property under § 1325(a)(5)(B), because BAPCPA only added § 506(a)(2) to codify *Rash's* holding that replacement value should govern in the retention context.  We acknowledge that cases have described § 506(a)(2) as a codification of *Rash*, *see, e.g., In re Martinez*, 409 B.R. 35, 40 (Bankr. S.D.N.Y. 2009), but they do not hold that § 506(a)(2) is limited to the facts of *Rash*.  Nor does the text of § 506(a)(2) support that conclusion.

Santander also suggests that it is improper to conduct any valuation at all, because *Rash* "does not state that the court is to pre-determine the value of surrendered vehicles under § 506(a) based on foreclosure value, or any other value standard."  (Ini. Br. 12.)  However, as Santander concedes, § 506(a)(1) bifurcation applies.  (Reply Br. 2.)  Because bifurcation is premised on the collateral's valuation, "[i]t was permissible for [Brown] to seek a valuation in proposing [his] Chapter 13 plan."  *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 328, 113 S. Ct. 2106, 2110 (1993) ("Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.").

## C.

9

Nor are we persuaded by Santander's arguments that applying § 506(a)(2) in the surrender context would be absurd. Santander argues that it would be absurd because it allows debtors to surrender collateral in full satisfaction of the debt. This overstates the effect of § 506(a)(2). Surrender would satisfy the creditor's secured claim, not the entire debt. If a creditor holds an undersecured claim, the creditor would still have an unsecured claim to the extent the debt exceeds the collateral's judicially-determined replacement value.

Santander also argues that applying § 506(a)(2) would be absurd because it eliminates creditors' contract and state law rights to liquidate and pursue an unsecured claim for any deficiency. But state law does not govern if the Bankruptcy Code requires a different result. *See Butner v. United States,* 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979); *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955 (2000) (holding that creditors' rights are "subject to any qualifying or contrary provisions of the Bankruptcy Code"). Here, the Bankruptcy Code is contrary to state law, as an unsecured claim under § 506(a)(1) and (a)(2) equals the amount that the debt exceeds the property's replacement value—not the amount of post-sale deficiency. Thus, state law cannot apply.

During oral argument, Santander cited *Graupner*, 537 F.3d 1295, and contended that applying § 506(a)(2) would be unfair to secured creditors and contrary to the legislative intent to benefit secured creditors. But *Graupner* did not

10

address § 506(a)(2); it addressed the "hanging paragraph" at the end of § 1325(a)—a provision added by the BAPCPA to preclude § 506(a) bifurcation.  *See* 11 U.S.C. § 1325(a)(*); *In re Barrett*, 543 F.3d 1239, 1243 (11th Cir. 2008).  In finding that the purpose of the hanging paragraph was to benefit secured creditors, *Graupner* noted the title of the BAPCPA section that added the hanging paragraph: "Giving Secured Creditors Fair Treatment in Chapter 13."  537 F.3d at 1297-98, 1302.

The effect of § 506(a)(2) is different than that of the hanging paragraph.[3] Further, to the extent the title of the enacting BAPCPA section—"Fair Valuation of Collateral"—is indicative of the legislative intent for adding § 506(a)(2), our construction is consistent.  *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 327, 119 Stat. 23, 99 (2005). Congress may believe that a replacement value standard provides a "fair valuation" for cases falling within the scope of § 506(a)(2).  Santander's assertion that it is unfair to secured creditors is a policy argument that cannot overcome the plain

---

[3] The court in *In re Rodriguez*, 375 B.R. 535 (B.A.P. 9th Cir. 2007) speculated that the hanging paragraph was added to protect secured creditors from § 506(a)(2)'s valuation standard. *Id.* at 544 ("We suspect, but do not decide, that there is one very important reason why Congress chose to suspend section 506 from its application to section 1325(a)(5)(C)'s surrender option. . . . Section 506(a)(2)'s applicability is not limited to the retention, anti-cramdown option of section 1325(a)(5)(B).  Thus, without the hanging paragraph, upon surrender of a 910 vehicle, the 'replacement value' would be used to reduce the total amount owed to the 910 creditor, rather than the amount actually realized on liquidation.  That would inevitably lead to a smaller deficiency claim.  By rendering section 506(a)(2) unavailable following surrender, there is no artificially inflated reduction of the total debt . . . ." (footnote omitted)).

textual indication of § 506(a)(2): that Congress did not intend to limit § 506(a)(2) to cases where the debtor retains collateral under § 1325(a)(5)(B). *See Lamie v. U.S. Trustee*, 540 U.S. 526, 542, 124 S. Ct. 1023, 1034 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. . . . In the meantime, we must determine intent from the statute before us.").

The district court's order affirming the bankruptcy court is **AFFIRMED.**