# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60533

United States Court of Appeals
Fifth Circuit

**FILED**
August 13, 2018

Lyle W. Cayce
Clerk

In the Matter of: KAYLA GLENN,

    Debtor

--------------------------------------

21ST MORTGAGE CORPORATION,

    Appellant,

v.

KAYLA GLENN,

    Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi

Before ELROD, COSTA, and HO, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This case involves whether, under § 506(a) of the Bankruptcy Code, delivery and setup costs should be included in the valuation of a retained mobile home in a Chapter 13 proceeding. Both the bankruptcy court and the district court determined that delivery and setup costs should not be included in the mobile home's valuation. We agree and therefore AFFIRM.

No. 17-60533

## I.

The relevant facts of this case are undisputed. 21st Mortgage Corporation financed Kayla Glenn's purchase of a used mobile home for the "base price" of $29,910. This base price apparently included the cost of delivering the mobile home, as well as the costs of blocking, leveling, and anchoring required by Mississippi law. 21st Mortgage retains a purchase-money security interest in the home and has a secured claim of $27,714.

Glenn filed for bankruptcy under Chapter 13. Glenn's bankruptcy plan allowed her to retain her mobile home and pay 21st Mortgage the secured value (plus 5% interest) over the life of the plan. 21st Mortgage objected to the confirmation of the plan because it disputed the valuation of Glenn's home. The dispute is whether $4,000—the alleged cost of necessary delivery and setup services for Glenn's mobile home—should be included in the valuation. Because Glenn has chosen to retain her mobile home, she will not again incur the costs of delivery and setup.

The bankruptcy court determined that the delivery and setup costs should not be included in the valuation of Glenn's mobile home, overruling 21st Mortgage's objection to the plan's confirmation. In light of the text of § 506(a) and the Supreme Court's decision in *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997), the bankruptcy court reasoned that including delivery and setup costs in the valuation of a mobile home that has already been delivered and set up would be inconsistent with the statutory mandate to consider the "proposed disposition or use" of the property and with the Supreme Court's interpretation of that language.

The district court agreed with the bankruptcy court's decision in light of *Rash* and the text of § 506(a), noting that "[v]irtually all of the courts that have considered . . . whether to include delivery and setup costs in a mobile home valuation have reached the same conclusion." The district court therefore

No. 17-60533

affirmed the bankruptcy court's judgment and dismissed the appeal. 21st Mortgage timely appealed to our court.

II.

"We review 'the decision of a district court sitting as an appellate court in a bankruptcy case by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court.'" *Endeavor Energy Res., L.P. v. Heritage Consol., L.L.C. (In re Heritage Consol., L.L.C.)*, 765 F.3d 507, 510 (5th Cir. 2014) (quoting *Clinton Growers v. Pilgrim's Pride Corp. (In re Pilgrim's Pride Corp.)*, 706 F.3d 636, 640 (5th Cir. 2013)). "Acting as a 'second review court,'" we review a bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 538 (5th Cir. 2015) (quoting *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 796 (5th Cir. 1997)); *ASARCO, L.L.C. v. Barclays Capital, Inc. (In re ASARCO, L.L.C.)*, 702 F.3d 250, 257 (5th Cir. 2012). Issues of statutory interpretation are reviewed *de novo*. *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 261 (5th Cir. 2009).

III.

The dispute here centers on conflicting interpretations of § 506(a) of the Bankruptcy Code. 21st Mortgage argues that because § 506(a)(2) requires calculating replacement value "without deduction for costs of sale or marketing," delivery and setup costs should be included in the replacement value of a mobile home. Moreover, according to 21st Mortgage, a mobile home's "replacement value"—defined as "the price a retail merchant would charge for property of that kind"—necessarily includes delivery and setup costs. 21st Mortgage also contends that the "proposed disposition or use" standard from the Supreme Court's decision in *Rash* does not apply here because § 506(a)(2)'s

3

language was added after *Rash* and applies regardless of whether a debtor retains her property. The Manufactured Housing Institute submitted an amicus brief in support of 21st Mortgage's argument, asserting that, under § 506(a)(2), the price a retail merchant would charge includes delivery and setup costs for mobile homes.

Glenn did not submit a brief to our court on appeal. We requested the input of the United States Trustee Program.[1] The United States Trustee for Region 5 (the Trustee) submitted a brief in support of the district court's determination that the valuation of a mobile home should not include delivery and setup costs. The Trustee first contends that § 506(a)(2)'s definition of replacement value as "the price a retail merchant would charge for property of that kind" indicates that courts should "identify the retail price of a mobile home, not all costs incurred in connection with the purchase of a home." The Trustee relies on *Rash* as directing courts to focus on the proposed disposition of property in making a valuation. Moreover, the Trustee emphasizes that § 506(a)(2)'s exception for "costs of sale or marketing" does not apply here because delivery and setup costs "are not 'costs of sale,' a term which refers to the seller's costs of doing business."

We begin with the text of § 506(a). *See Nowlin*, 576 F.3d at 261 ("When interpreting a statute, we begin by examining its language."); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). It is a cardinal rule of statutory interpretation that "effect shall be given to every

---

[1] The United States trustees are appointed by the United States Attorney General and are responsible for, among other things, "supervis[ing] the administration of cases and trustees in cases under chapter 7, 11, 12, 13, or 15 of title 11." 28 U.S.C. §§ 581, 586; *see Balser v. Dep't of Justice, Office of U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003) ("The Attorney General of the United States is empowered to appoint United States trustees for each federal judicial district.").

clause and part of a statute." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)).

Section 506(a) of the Bankruptcy Code governs the valuation of secured claims in Chapter 13 bankruptcy proceedings. Section 506(a)(1) states that the value of a creditor's claim "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ." Section 506(a)(2) states:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2).

Section 506(a)(2) should not be construed to the exclusion of § 506(a)(1) when the two clauses can be read consistently. "[I]t is a 'cardinal rule that a statute is to be read as a whole,' in order not to render portions of it inconsistent or devoid of meaning." *Zayler v. Dep't of Agric. (In re Supreme Beef Processors, Inc.)*, 468 F.3d 248, 253 (5th Cir. 2006) (en banc) (quoting *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 n.7 (2003)); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012) (Under the harmonious-reading canon, "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). We agree with the district court that there is nothing in § 506(a)(2) that prohibits considering the "proposed disposition or use" of the property in the valuation.

No. 17-60533

Moreover, the Supreme Court in *Rash*, considering the language of what is now § 506(a)(1), stated that "the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question." 520 U.S. at 962. In *Rash*, the Supreme Court held that § 506(a) requires a replacement-value standard when a debtor exercises the "cram down" option provided by § 1325(a)(5)(B) of the Code and thus "seeks to retain and use the creditor's collateral in a Chapter 13 plan."[2] *Id.* at 955–56. While declining to establish an exclusive method for calculating replacement value, the Court reasoned that "replacement value, in this context, should not include certain items." *Id.* at 965 n.6. As an example, the Court stated that "where the proper measure of the replacement value of a vehicle is its retail value, . . . [a] creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." *Id.*

Section 506(a)(1)—and the Supreme Court's interpretation of its language in *Rash*—inform our interpretation of § 506(a)(2).[3] We interpret

---

[2] *Rash* was decided before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). When Congress amended § 506(a) of the Bankruptcy Code in 2005, § 506(a) became § 506(a)(1), and a new subsection was added that became § 506(a)(2). BAPCPA, Pub. L. No. 109-8, 119 Stat. 23 (2005).

[3] 21st Mortgage discusses various congressional hearings that addressed the state of the law after *Rash* and argues that "[t]he legislative history of § 506(a)(2) and the context in which it arose" show that Congress intended § 506(a)(2) to overrule footnote six of *Rash*. 21st Mortgage's reliance on legislative history is inapposite here. First, under our circuit's caselaw, considering legislative history is permissible only if there is ambiguity. *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 492–93 (5th Cir. 2004). The determinations of most courts that have addressed the issue and the guidance of a leading bankruptcy treatise indicate that the text of § 506(a)(2) does not conflict with *Rash*. *See In re Scott*, 437 B.R. 168, 172–73 (Bankr. D.N.J. 2010) ("Since the enactment of BAPCPA, most courts have interpreted the first sentence of § 506(a)(2) as codifying the Supreme Court's decision in *Rash*."); 4 Collier on Bankruptcy ¶ 506.03[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018) ("In amending section 506(a) in 2005, Congress confirmed certain aspects of the Court's decision in *Rash*, and supplied additional rules governing the valuation process . . . ."). Looking to the text alone, § 506(a)(2) is not ambiguous, and thus reliance on legislative history is

§ 506(a)(2) as consistent with § 506(a)(1) and the Supreme Court's statement that "the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question." *Id.* at 962. 21st Mortgage "should not receive portions of the retail price . . . that reflect the value of items [Glenn] does not receive" when she retains her mobile home. *See id.* at 965 n.6.

Under § 506(a)(2), the valuation of a mobile home is determined by its replacement value, which is "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2). This specific replacement-value standard accords with § 506(a)(1)'s directive to consider the "proposed disposition or use" of the property because both statutory requirements focus on the specific property in question. *See In re Allen*, No. 16-11029, 2017 WL 685568, at \*3 (Bankr. W.D. La. Feb. 17, 2017) (interpreting the phrase "of that kind" in § 506(a)(2) to mean "a mobile home of that kind that is already fixed in place and therefore not in need of delivery, setup and connection costs"); *In re Prewitt*, 552 B.R. 790, 799 (Bankr. E.D. Tex. 2015) (reasoning that

---

unwarranted. Moreover, even assuming *arguendo* that we could consider the legislative history here, it is far from clear that Congress intended § 506(a)(2) to overrule footnote 6 of *Rash*. *See In re Breaux*, 410 B.R. 236, 241 (Bankr. W.D. La. 2009) ("The legislative history of section 506(a)(2) is limited and does not provide much guidance on the intended purpose of section 506(a)(2)."). However, because the text of § 506(a)(2) does not permit us to consider legislative history, we leave for another day the discussion of whether it is ever appropriate to look beyond the text to legislative history. *Compare Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 783 (2018) (Sotomayor, J., concurring) ("[E]ven when, as here, a statute's meaning can clearly be discerned from its text, consulting reliable legislative history can still be useful . . . ."), *with Digital Realty Tr., Inc.*, 138 S. Ct. at 783–84 (Thomas, J., concurring in part and concurring in the judgment) ("[W]e are a government of laws, not of men, and are governed by what Congress enacted rather than by what it intended." (quoting *Lawson v. FMR LLC*, 571 U.S. 429, 459–60 (2014) (Scalia, J., concurring in part and concurring in the judgment))). *Cf. Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 627 n.9 (5th Cir. 2013) (stating that "[w]e do not rely on this legislative history in our analysis of this case" and quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material.")).

§ 506(a)(2) is consistent with *Rash* because it defines "replacement value of collateral securing a consumer debt . . . as the price a retail merchant would charge for the property itself—not for tangential services that will not be actually performed").[4]  Thus, considering the property at issue under § 506(a)(2)'s specific replacement-value standard and in light of the property's "proposed disposition or use," we hold that delivery and setup costs of a mobile home retained by a debtor must be excluded from the mobile home's valuation under § 506(a) of the Bankruptcy Code.

Section 506(a)(2)'s definition of replacement value as including any "costs of sale or marketing" does not undermine this conclusion.  The mandatory inclusion of costs of sale or marketing does not extend to all costs tangential to the replacement of a mobile home.  While costs of sale or marketing are repeat costs of doing business, delivery and setup costs for a retained mobile home are completed service charges "which will not, in reality be repeated." *In re Prewitt*, 552 B.R. at 800; *see also In re Thornton*, No. 15-6762-RLM-13, 2016 WL 3092280, at *4 (Bankr. S.D. Ind. May 23, 2016) ("Courts consistently have held that, under § 506(a)(2), value cannot be reduced by costs of removal and cannot be increased by costs of set up and

---

[4] Amicus Manufactured Housing Institute states that delivery and setup costs "are integral parts of the price of a manufactured home when sold by a retailer" in part because Mississippi law requires that retail dealers be licensed and provide delivery and setup services and because the quoted price of a mobile home typically includes the costs of delivery and setup.  However, as the bankruptcy court in this case observed, "[a] retailer may be required to obtain a license in order to sell manufactured homes, but paying for the license does not increase the value of the mobile homes the retailer will sell . . . ."  Moreover, as the Trustee contends, the value of collateral "should not turn on whether a cost is typically quoted separately or as part of the base price."  Delivery and setup costs, the Trustee correctly reasons, "are not part of the 'value' of the 'property' and they are not implicated by Glenn's retention of the home."  Like 21st Mortgage, the Manufactured Housing Institute neglects the import of the statutory language, which indicates that courts should consider the particular mobile home at issue. *Cf. In re Allen*, 2017 WL 685568, at *3 ("The mobile home is already delivered, set up and connected to the ground and utilities at its current location. These additional requested costs [of delivery and setup] are superfluous.").

delivery."). As the Trustee correctly emphasizes, delivery and setup costs "are not costs of sale being deducted from the home's retail value, but instead [are] additional costs, like sales taxes and service agreements, separate and apart from that value." Thus, § 506(a)(2)'s prohibition on deducting costs of sale or marketing does not compel including delivery and setup costs. *See* 4 Collier on Bankruptcy ¶ 506.03[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018) ("[S]ection 506(a)(2) directs that value shall be determined without deduction for costs of sale or marketing, but leaves open the possibility that the value of other items may be deducted, such as those identified by the Court in *Rash* (warranties and other items that the debtor does not receive).").

Our holding accords with the determinations of all courts that have addressed the issue. *See In re Eaddy*, No. CV 15-05744-DD, 2016 WL 745277, at *7 (Bankr. D.S.C. Feb. 23, 2016) ("Courts have uniformly rejected including [relocation and setup] costs when determining value pursuant to section 506(a).") (collecting cases). 21st Mortgage cites no caselaw to the contrary.[5]

In light of the statutory requirements and the Supreme Court's determination that the "proposed disposition or use" of collateral is crucial to its valuation, delivery and setup costs must not be included in the valuation of a retained mobile home under § 506(a) of the Bankruptcy Code.

---

[5] Moreover, 21st Mortgage identifies no circuit caselaw—either from this court or from a sister circuit—addressing whether delivery and setup costs should be included in a § 506(a) valuation of a retained mobile home in a Chapter 13 case. *Compare In re Heritage Highgate, Inc.*, 679 F.3d 132, 135–36, 141 (3d Cir. 2012) (considering how bankruptcy courts should value collateral retained by a Chapter 11 debtor under § 506(a) and stating that if the language in *Rash* about the proposed disposition or use being of paramount importance "is to be afforded any significance, then, the appropriate standard for valuing collateral must depend upon what is to be done with the property—whether it is to be liquidated, surrendered, or retained by the debtor"), *with In re Brown*, 746 F.3d 1236, 1240–41 (11th Cir. 2014) (holding that § 506(a)(2)'s valuation standard applies when a Chapter 13 debtor surrenders her vehicle and reasoning that § 506(a)(1)'s "broader 'disposition or use' valuation language" was inapplicable).

No. 17-60533

## IV.

Accordingly, we AFFIRM the judgment of the district court.