# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2025

Lyle W. Cayce
Clerk

————————

No. 24-20238

————————

In the Matter of Johnnie G. Eichor,

*Debtor*,

Benson Scott Wyly, *doing business as* SW Equipment Company, Incorporated; Pam Dale Wyly,

*Appellants*,

*versus*

Johnnie G. Eichor,

*Appellee*.

————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-3274

————————————————————————

ON PETITION FOR REHEARING
AND REHEARING EN BANC

Before Haynes, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:[*]

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-20238

IT IS ORDERED that the petitions for panel rehearing and rehearing en banc are DENIED. The court's prior panel opinion is WITHDRAWN, and the following opinion is SUBSTITUTED therefor.

Benson and Pam Wyly sued Johnnie Eichor in Texas state court for breach of a series of "loan" contracts, and, shortly after, Eichor filed for bankruptcy protection. Even after the bankruptcy court entered a discharge order prohibiting Eichor's creditors from attempting to collect discharged debts, the Wylys continued to pursue their claims. Eichor filed an adversary complaint against them, alleging that their state court action violated the bankruptcy court's discharge order. The bankruptcy court agreed, finding that the Wylys willfully violated its discharge order. The court held them in civil contempt and awarded damages and attorney's fees to Eichor. The district court affirmed the bankruptcy court. The Wylys then appealed to this court, and we likewise affirm.

## I.

Eichor and the Wylys have been friends for many years. Over that time, the Wylys periodically advanced funds to Eichor, and they usually memorialized these advances in written loan agreements. Three of these agreements are relevant to this appeal.

The first was entered in June 2015. Prior to that, Eichor's business was struggling, and he discussed the possibility of borrowing money with Benson Wyly. The Wylys agreed to loan Eichor $50,000, to be repaid in one year with $10,000 interest. To secure the loan, Eichor pledged a boat and a house that he had owned since 2000, and where he would continue to live

until at least 2019.[1] The Wylys' attorney drafted the loan agreement, and the parties executed it in June 2015.

The contract was not a model of precision, to put it charitably. Though ostensibly memorializing the above loan, it was titled "SALES AGREEMENT," and, after identifying the collateral property, provided that

> Sellers agree to sell and Buyer agree [sic] to purchase the above property on July 1, 2016 for the sum total of $65,000.00 (TWENTY FIVE THOUSAND) [sic]. Buyers agree to advance Seller the total sum of $40,000.00 for the exclusive and sole right to purchase the property on July 1, 2016. On July 1, 2016, or shortly thereafter[,] Buyers may tender the sum total of rest of the $25,000 to complete the sale . . . .

> Sellers agree and Buyer's [sic] agree that Sellers shall retain a contractual right to terminate this sales contract for the sum total of $60,000.00 (SIXTY THOUSAND) due and payable to Benson Scott Wyly on July 1, 2016.

Though at variance with these written terms, the Wylys advanced Eichor $45,000 upon execution of this agreement. The contract was recorded in the real property records of Brazoria County, Texas.

Eichor soon needed more money. Prior to the maturity or satisfaction of their June 2015 agreement, the parties entered a second agreement, "SALES AGREEMENT TWO." This agreement was nearly identical to the first; in it, Eichor purported again to "sell" the same property to the Wylys, even though he had not yet repaid the money advanced under the first agreement:

---

[1] It is unclear what happened to the boat after this first agreement, nor do the parties discuss it. Therefore, we focus only on the house from here.

No. 24-20238

> [Eichor] agree[s] to sell and [the Wylys] agree to purchase the [house] on July 1, 2016 for the sum total of $65,000.00 (TWENTY FIVE THOUSAND) [sic]. [The Wylys] agree to advance [Eichor] the total sum of $50,000.00 for the exclusive and sole right to purchase the property on September 1, 2016. On September 1, 2016, or shortly thereafter[,] [the Wylys] may tender the sum total of $15,000.00 to complete the sale . . . .

> [Eichor] shall retain a contractual right to terminate this sales contract for the sum total of $70,000.00 (SEVENTY THOUSAND) due and payable to Benson Scott Wyly on September 1, 2016.

Unlike the first contract, this agreement was not recorded. After executing the document, Benson Wyly provided Eichor with a $50,000 check, with the notation that it was a "loan."

The parties executed a third contract, "SALES AGREEMENT THREE," in January 2017. This final agreement referenced the first two and specifically acknowledged that the initial June 2015 loan had been fully repaid and that the remaining balance on the second loan was $60,000. In Agreement Three, the parties sought to "reform, modify and revise[] Sales Agreement Two":

> [Eichor] agree[s] to sell and [the Wylys] agree to purchase the [house] on April 20, 2017 for the sum of $126,000.00 (SIXTY-FIVE THOUSAND) [sic]. [The Wylys] . . . advanced [Eichor] the total of $126,000.00 for the exclusive and sole right to purchase the property on April 20, 2017 . . . .

> [Eichor] agrees and [the Wylys] agree that [Eichor] shall retain a contractual right to terminate this sales contract for the sum of $126,000.00 (ONE HUNDERED [sic] AND TWENTY SIX THOUSAND) due and payable to Benson Scott Wyly on April 20, 2017.

4

No. 24-20238

Upon execution of the agreement, Wyly provided Eichor a $35,000 check, similarly noting that it was a loan. This agreement was also not recorded.

Meanwhile, Eichor failed to pay the ad valorem taxes due on the property for 2017 and 2018, and the Pearland Independent School District sued in Texas state court to recover taxes due in June 2019. In October 2020, the Wylys filed a Petition in Intervention to Quiet Title (the Petition) in the tax case, alleging that Eichor failed timely to exercise his right to terminate Agreement Three and failed to execute documents necessary to complete the conveyance. Among other things, the Petition requested a declaratory judgment that the Wylys rightfully owned the property.[2]

In November 2020, Eichor filed for Chapter 7 bankruptcy relief. Eichor listed the property in his schedules as his exempted homestead under Texas law. He listed Benson Wyly as an unsecured creditor. In February 2021, the bankruptcy court entered a discharge order under 11 U.S.C. § 727 in Eichor's case. The discharge order was thereafter served on Wyly through his attorney.

Despite having notice of Eichor's bankruptcy discharge order, the Wylys filed a motion for default judgment on their Petition in the state tax case in June 2021. In response, Eichor notified the Wylys' counsel that the motion for default judgment violated the discharge order, that Eichor intended to bring an adversary suit in bankruptcy court against them, and that the state court default judgment could be void. The Wylys ignored the notice and obtained a default judgment in the state action. The default judgment stated that the Wylys had "acquired all right, title and interest on [the property] as of April 20, 2017" and that Eichor had been "divested of all

---

[2] The Wylys alleged claims against Eichor for breach of contract, declaratory judgment, attorney's fees and court costs, and pre- and post-judgment interest.

right, title and interest in the property that same day." Upon receiving the default judgment, the Wylys changed the locks on the house and posted a copy of the default judgment on the door.

Eichor followed through with an adversary proceeding in bankruptcy court. In it, he alleged that the Wylys had violated the Chapter 7 discharge order in his bankruptcy case by continuing to prosecute their state court Petition after the Wylys received notice of the discharge order. The bankruptcy court found that the three agreements were loans rather than bona fide asset purchases, and that even though they were intended to be secured loans, they were not. The court further found that the Wylys had no valid security interest in the property because there was no perfected lien, such that the Wylys held only an unsecured claim. Based on those findings, the bankruptcy court concluded that the Wylys' willful prosecution of their Petition violated the discharge injunction and held the Wylys in civil contempt. The court awarded Eichor title to the property, as well as actual damages and attorney's fees. The Wylys appealed to the district court, which affirmed the bankruptcy court. They now appeal the district court's decision.

## II.

"We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied." *Nabors Offshore Corp. v. Whistler Energy II, L.L.C.* (*Matter of Whistler Energy II, L.L.C.*), 931 F.3d 432, 441 (5th Cir. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)). "Acting as a 'second review court,' we review a bankruptcy court's legal conclusions de novo and its findings of fact for clear error." *21st Mortg. Corp. v. Glenn* (*Matter of Glenn*), 900 F.3d 187, 189 (5th Cir. 2018) (quoting *Official Comm. of Unsecured Creditors v. Moeller* (*In re Age Ref., Inc.*), 801 F.3d

530, 538 (5th Cir. 2015)).  Under clear-error review, "[w]e accept the bankruptcy court's findings of fact . . . unless we are left with the 'definite and firm conviction that a mistake has been committed.'"  *Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).

## III.

The Wylys contend that the bankruptcy court erred in its ruling against them because Eichor's discharge order did not contain clear and specific language prohibiting the Wylys from seeking a declaratory judgment in the state tax case that they had title to the property in question.  And because they did not receive clear notice that litigating their Petition violated the discharge order, there was insufficient evidence to sustain a holding of civil contempt.  They also assert that they had an objectively reasonable basis for believing they owned the property, such that their conduct did not support a contempt holding.[3]  We disagree on both points.

To hold a party in contempt for violating a bankruptcy discharge order, "there must be no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."  *Taggart v.*

---

[3] The Wylys also contend that the *Rooker-Feldman* Doctrine barred the bankruptcy court from modifying the state court judgment, and that the First Amendment prohibits discharge orders from curtailing access to state courts.  However, "*Rooker-Feldman* does not preclude review of void state court judgments" such as this.  *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 385 (5th Cir. 2017); *see also* 11 U.S.C.A. § 524(a) ("A discharge in a case under this title . . . voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727.").  And they only raised the First Amendment argument in their post-trial memorandum in the bankruptcy court and their motion for reconsideration in the district court.  *See Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 374 (5th Cir. 2020) (quoting *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 185 (5th Cir. 2018).  Accordingly, the Wylys did not properly preserve these arguments, and we will not consider them further.

*Lorenzen*, 587 U.S. 554, 560 (2019).  In other words, there must not be any "'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."  *Id.* at 565.  Eichor's discharge order, expressly based on the governing statute, "discharge[d] the debtor from all debts that arose before the date of the order for relief under this chapter."  11 U.S.C. § 727(b).  Eichor's creditors were thereafter prohibited from "commenc[ing] or continu[ing]" any action "to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a) (expressly applying to "any debt discharged under § 727").[4]

By its terms, the discharge order prohibits creditors from attempting "to collect from [Eichor] personally on discharged debts."  Under the heading "Creditors Cannot Collect Discharged Debts," the order explains: "[N]o one may make any attempt to collect a discharged debt from the debtor[] personally.  For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtor[] personally on discharged debts."  And it continues:  "Most debts are covered by the discharge, but not all.[5]  Generally, a discharge removes the debtor['s] personal liability for debts owed before the debtor['s] bankruptcy case was filed."  The order carves out a potentially relevant exception, that "a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated.  For example, a creditor may

---

[4] The Wylys posit that because Eichor's discharge was ordered under § 727, without mention of § 524, then § 524 does not apply.  They reason that § 727 does not contain injunctive language or prohibit suits to recover discharged debts, so it was not clear that they could not pursue a default judgment in the state tax case.  But § 524 explicitly applies to discharges under § 727.  Just as clearly, Eichor's discharge order itself states that "creditors cannot sue . . . or otherwise try to collect from [Eichor] personally on discharged debts."

[5] The discharge order lists several categories of non-discharged debts, but only one, discussed *infra*, is pertinent to the Wylys' position on appeal.

have the right to foreclose a home mortgage." Otherwise, the discharge order is clear that Eichor's personal debts acquired before he filed bankruptcy were discharged, and creditors cannot attempt to collect them post-discharge.

To the extent that the Wylys' Petition in the state tax case sought to collect a personal loan balance from Eichor, the discharge order plainly prohibited that. On the other hand, if the Wylys were pursuing a claim against the debtor's property, i.e., if they had a lien against the property that was not avoided or eliminated, or had truly purchased the property via the agreements, then they "may have [had] the right to foreclose" on that interest. The bankruptcy court found that the parties intended these loans to be personal debts, the loans were not properly secured, and the Wylys were barred from seeking to collect the debts via their state court Petition. We discern no clear error in those findings.

The question turns on whether the Wylys had an objectively reasonable basis to believe that the discharge order did not bar their conduct. They contend that it was reasonable to believe that they could pursue a declaratory judgment that they had title to the property at issue because, under their agreements with Eichor, they did not just loan him money but actually bought the pledged property. The Wylys point out that all three contracts are titled "sales agreements" and contain purchase/sale language. True enough, but as excerpted above, the contracts also contain incomplete and inconsistent terms, and only the first agreement—which was fully satisfied before Eichor's bankruptcy—was recorded in the Brazoria County land records. And the conduct of the parties militates against any reasonable belief that the Wylys bought the property or even intended to do so: Eichor continued to reside there and listed the residence as his homestead, the Wylys never took possession of the property, and the Wylys had a history of making personal loans to Eichor, well before these three agreements. At least

two checks that Benson Wyly gave to Eichor pursuant to Agreement Two and Agreement Three were notated as "loans." More fundamentally, it also makes little sense for the parties to have "sold" and "bought" the same property three times, in fairly quick succession, for an ever-evolving price.

The bankruptcy court considered all this evidence, as augmented by the parties' testimony, and found these contracts embodied personal loans rather than sales agreements. And "[w]hen there is a fact finding that the parties intended the transaction to be a loan, and that finding is supported by probative evidence, the law will impute the existence of a debt." *Johnson v. Cherry*, 726 S.W.2d 4, 6 (Tex. 1987) (citing *Wells v. Hilburn*, 98 S.W.2d 177, 180 (Comm'n App. 1936)). The bankruptcy court's factual conclusions that these transactions were loans, were intended by the parties to be loans, and therefore were covered by Eichor's discharge order are "supported by probative evidence." *Id.* The court's conclusion that the Wylys willfully pursued collection of a discharged debt readily follows these findings. The Wylys thus had no objectively reasonable basis to believe their conduct was lawful under the discharge order, and the bankruptcy court was within its bounds to hold them in contempt and order the relief it did.

Even if the agreements were construed as purchase/sale contracts, they would be void under Texas law. The Texas Constitution states that "[a]ll pretended sales of the homestead involving any condition of defeasance shall be void." TEX. CONST. art. XVI, § 50(c). "A condition of defeasance permits the seller to reclaim the title to the property conveyed after the loan is repaid." *In re Perry*, 345 F.3d 303, 313 (5th Cir. 2003). The bankruptcy court determined that the property was Eichor's homestead, and there was ample support for this finding, as Eichor continued to live in the house and pay (or at least remain liable for) property taxes. *See id.* at 310 ("Under Texas's generous homestead law, homestead rights may be lost only through death, abandonment or alienation."). So the contracts' terms allowing

Eichor to "terminate" the conveyance of his pledged property by repaying his loan balance violated the Texas Constitution, rendering any purchase/sale agreement void *ab initio*. Beyond that problem, the contracts were not properly recorded, and thus they effected no genuine transfer of property, or secured interest, for that reason as well. *See* TEX. PROP. CODE ANN. § 11.001(a) ("To be effectively recorded, an instrument relating to real property must be eligible for recording and must be recorded in the county in which a part of the property is located.").

Thus, charitably crediting the Wylys' assertion that they believed they were buying Eichor's property and discounting the bankruptcy court's contrary fact findings, the Wylys' belief was not objectively reasonable because the agreements manifestly did not comply with either the Texas Constitution or Texas property law. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 574 (2010) (quoting *Barlow v. United States*, 32 U.S. 404, 411 (1833)) ("It is a common maxim that 'ignorance of the law will not excuse any person, either civilly or criminally.'"); *Hunt v. Rhodes*, 26 U.S. 1, 8 (1828) ("It is a principle of jurisprudence, that every one in his acts and contracts is presumed to be conversant with the law; or, if ignorant, that he is to be made to abide the consequences."). As the bankruptcy court concluded, the Wylys had no secured interest in the property and no perfected lien, such that any attempt to take title to the property distilled to an attempt to collect an unsecured, and discharged, debt.

At base, the Wylys persisted in litigating their Petition in state court to a default judgment against Eichor in the face of actual notice of Eichor's discharge order, notice from him that they were violating the bankruptcy court's injunction, and at least imputed knowledge that under Texas law any judgment they obtained would be void. They point to nothing, nor do we perceive anything, that would indicate clear error in the bankruptcy court's factual determination that the Wylys were attempting to collect a personal

No. 24-20238

debt, willfully subverting the discharge order in the process.  To the contrary, the grounds for that court's rulings are well supported by the record.

## IV.

Eichor's discharge order barred attempts by creditors to recover his discharged personal liabilities.  The bankruptcy court found, based on evidence sufficient to hurdle our clear-error standard of review, that the Wylys made personal loans to Eichor, and thereafter willfully violated the discharge order in attempting to collect that debt without a reasonable basis to believe they could properly do so.  Thus, the bankruptcy court acted within its bounds to hold the Wylys in contempt and award Eichor damages and attorney's fees.

AFFIRMED.