# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 11, 2023

Lyle W. Cayce
Clerk

No. 21-20618

Carlo Giuseppe Civelli;
Aster Capital S.A. (LTD) Panama,

*Plaintiffs—Appellants*,

*versus*

J.P. Morgan Securities, L.L.C.;
JP Morgan Chase Bank, N.A.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-3739

Before Smith and Haynes, *Circuit Judges.**

Jerry E. Smith, Circuit Judge:

Carlo Civelli and his company, Aster Capital S.A. (LTD) Panama, appeal a summary judgment declaring their claims of negligence and conspiracy to commit theft to be time-barred and their claim of breach of fiduciary duty to be without merit. Plaintiffs further contend the district court erred

---

* Judge Barksdale took part in oral argument but now stands recused and did not participate in the opinion. This matter is decided by a quorum. *See* 28 U.S.C. § 46(d).

No. 21-20618

in awarding attorneys' fees.

Finding these assertions without merit, we affirm on all issues.

I.

Civelli, an investor and venture capitalist, and Phillippe Mulacek, CEO of InterOil Corporation ("InterOil"), an energy company, developed a business relationship beginning in September 2002. Throughout that relationship, Civelli (and "entities controlled and beneficially owned by him") provided loans, cash advances, and funds to Mulacek and InterOil, who were "regularly in financial distress."

At issue is a series of loans and transfers that began in September 2009. "Mulacek was a defendant in a Texas lawsuit . . . [and] asked Civelli to loan Mulacek shares in InterOil that could be used in the future for the purposes of satisfying a potential judgment or settlement." Without any formal written documentation, Civelli entered into a loan agreement under which Mulacek could use Civelli's InterOil shares for the purpose of satisfying a potential judgment or settlement. Plaintiffs allege that the terms of the agreement were as follows:

> (1) [A] loan of InterOil shares would be made to Mulacek for potential use in the Texas Lawsuit and subsequently payable upon demand, (2) the loaned InterOil shares would be held in the trust account of Dale A. Dossey, Esq. ("Dossey"), an attorney in Texas who represented both Civelli and Mulacek in other matters, (3) if Mulacek actually needed the shares for the Texas Lawsuit, the shares could be transferred to the plaintiffs in the Texas Lawsuit, but only upon Civelli's approval, and the loan could be documented at that time, and (4) that the shares would be returned to Civelli upon request or the loan repaid.

Following the agreement, Civelli created an entity, Aster Capital S.A. (LTD) Panama ("Aster Panama"), to hold these shares. Dossey then sent

No. 21-20618

an email to Civelli asking Civelli to send the shares and stating that he would "open a trust account for Aster here [at Chase Bank] to show a paper trail." Civelli complied with the request.

Plaintiffs allege that next, without their knowledge, "Mulacek instructed Dossey to transfer a number of the loan shares from the Dossey Chase Trust Account to accounts of various corporations beneficially owned or controlled by Mulacek." That occurred in several stages. First, shares were transferred from the Dossey Chase Trust Account to a J.P. Morgan account ("JP Account 1") in November 2009. Second, shares were transferred in December 2009 from the Dossey Chase Trust Account to a Deutsche Bank account that belonged to Mulacek's company PIE Group LLC ("PIE"). Third, shares were transferred from that Deutsche Bank account to a separate account at J.P. Morgan ("JP Account 2"). Fourth, shares in JP Account 2 were transferred to "JP Account 3," which plaintiffs allege was known as "a PIE 'special account' where stock was to be held for the benefit of Aster Panama." Then, in December 2013, shares from JP Account 3 were transferred to a bank in Singapore. The J.P. Morgan defendants were instructed to transfer those shares from JP Morgan Account 3 to the Singapore bank "for further credit to account #113845 into Aster Capital, Inc."[1]

Civelli and Mulacek continued to have a business relationship until 2016, at which point Mulacek's actions and words made Civelli concerned he would not receive his shares back from Mulacek. In late 2017, as part of a larger suit against Mulacek, Civelli and Aster Panama sued the J.P. Morgan

---

[1] Aster Capital, Inc. ("Aster Brunei"), was not Civelli's Aster Panama, but a completely separate company to which Civelli had no ownership or ties and which was alleged to be "beneficially owned and controlled by Mulacek."

No. 21-20618

defendants[2] for (1) breach of trust and fiduciary duty, (2) negligence, and (3) conspiracy to commit theft. The district court granted summary judgment on all counts relating to the J.P. Morgan defendants and awarded them attorneys' fees under the Texas Theft Liability Act ("TTLA"), Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b). Plaintiffs appeal.

## II.

As this dispute is between "citizens of a State and citizens or subjects of a foreign state," the requirements of diversity jurisdiction are satisfied. *See* 28 U.S.C. § 1332(a)(2). Civelli and Aster Panama are foreign parties. Civelli is alleged to be a citizen of Switzerland. Aster Panama is a foreign defendant registered in Panama with Civelli as its "sole beneficial owner and director." JPMS and Chase Bank are citizens of the United States. As reported by defendants,

> [JPMS] is a Delaware limited liability company with its principal office and place of business in New York. The sole member of JPMS is J.P. Morgan Broker-Dealer Holdings Inc., which is a Delaware corporation with its principal place of business in New York . . . . Defendant JPMS is an affiliate of [Chase Bank], a national bank with its principal office in Ohio.

Mulacek and his related entities are citizens of the United States and are not parties to this appeal. We agree with the parties that there is federal-court jurisdiction.

## III.

This court reviews a summary judgment *de novo*. *Cuadra v. Hous. Indep. Sch. Dist.* 626 F.3d 808, 812 (5th Cir. 2010) (citing *Shields v. Twiss*,

---

[2] The J.P. Morgan defendants are J.P. Morgan Securities, L.L.C. ("JPMS"), and JPMorgan Chase Bank, N.A. ("Chase Bank"). At other times in this case, JPMS has been erroneously referred to as "J.P. Morgan Chase Securities, L.L.C."

389 F.3d 142, 149 (5th Cir. 2004)). Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine when "the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In this posture, we "construe all facts and inferences in the light most favorable" to the nonmovant. *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (citation omitted).

IV.

Plaintiffs' claims are predicated on their theory that the J.P. Morgan defendants owed them a fiduciary duty. Therefore, say plaintiffs, J.P. Morgan should have asked for their consent before transferring the shares elsewhere. Because that did not occur, plaintiffs claim negligence, breach of fiduciary duty, and even conspiracy to commit theft. As the district court correctly held, each of these claims fails at the summary judgment stage.

A. Negligence.

Plaintiffs say that the J.P. Morgan defendants were negligent in failing to "obtain the consent of the owners of shares before transferring such shares" because that failure went against industry and company policy. Without reaching the merits of this claim, we dismiss it as time-barred.

In diversity cases, limitations is determined by the choice-of-law rules of the forum state. *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1103 (5th Cir. 1981). Texas's choice-of-law rules instruct us to apply Texas's statute of limitations, which for this claim is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *see also Henderson v. Republic of Texas*, 672 F. App'x 383, 384 (5th Cir. 2016). Plaintiffs sued in December 2017, but the transfer occurred in December 2013. Thus, the claims are time-barred

unless the rule of discovery applies.

The rule of discovery "is a 'limited exception' to the general rule that a cause of action accrues when a legal injury is incurred." *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018) (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011)). It applies "when the nature of the injury is inherently undiscoverable and the evidence of the injury is objectively verifiable." *Id.* (citing *S. V. v. R. V.*, 933 S.W.2d 1, 6 (Tex. 1996)). An injury is "inherently indiscoverable" where it is "unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313–14 (Tex. 2006)). The analysis is categorical, not fact-specific: Courts ask whether the injury "was the type of injury that could be discovered through the exercise of reasonable diligence," not whether a particular plaintiff could have discovered its injury with diligence. *Id.* (quoting *BP Am.*, 342 S.W.3d at 66). If the rule applies, limitations is tolled "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise of the cause of action." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citations omitted).

It is not easy to assert the rule of discovery, which "is a narrow exception that is only applied in 'exceptional cases.' Applications of the rule 'should be few and narrowly drawn.'" *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022) (first quoting *Via Net*, 211 S.W.3d at 313, and then quoting *S.V.*, 933 S.W.2d at 25). And the discovery rule "tolls limitations only until a claimant learns of a wrongful injury. Thereafter, the limitations clock is running, even if the claimant does not yet know: the specific cause of the injury; the party responsible for it, the full extent of it; or the changes of avoiding it." *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004) (citations omitted).

Plaintiffs have alleged that the J.P. Morgan defendants were negligent

in transferring the stocks to Aster Brunei without first asking for Plaintiffs' permission. Specifically, Plaintiffs claim that "the [J.P. Morgan] Defendants knew account 720-18452 was a 'special account' for the benefit of Aster Panama." Therefore, they were negligent when they "transferred the Loan Shares from a special account to [Aster Brunei], a third party who was not a beneficiary of the special account, and failed to obtain the consent of the owner . . . to transfer such shares." Civelli claims that the discovery rule applies because he could not, through due diligence, have learned of the wrongful injury until at least September 2016, when he first had reason to believe that "the Aster shares would not be returned."

But the parties appear to agree that Civelli knew of the transfer by February 25, 2014. Even assuming that an email (written by Civelli and dated February 25, 2014) stating, "I don't have any shares anymore, as the Aster shares were transferred out, without my knowledge or approval," was in fact "obtuse," as plaintiffs claim, Civelli himself submitted a declaration to the court stating, "I did learn around February of 2014 that Mulacek had transferred the Aster shares to one of his accounts in Singapore."

Plaintiffs do not dispute this point, instead submitting that "a fundamental flaw with the [J.P. Morgan defendants'] (and lower court's) reasoning was their near singular emphasis on when Mr. Civelli arguably had reason to conclude the 527,396 InterOil Shares had been transferred—without any attempt to illuminate why it *necessarily* followed the transfer was injurious to the Civelli Appellants." But for the negligence claim, that's all the appellees had to show, because under Texas law, that is when the asserted injury occurred.

Especially instructive is *Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 530–31 (Tex. 1997) (per curiam): Judwin, a landlord, had hired Velsicol, an exterminator, to treat her apartments for insects. Tenants

were upset to discover that there was residue of the toxic chemical chlordane inside their apartments. Judwin then sued Velsicol for, *inter alia*, damage to her property and business. Judwin knew that there was chlordane inside the apartments as early as 1987 but was not aware that the chlordane levels exceeded the legal limit until 1991, at which point she sued. The court held that the rule of discovery could not toll the standard two-year statute of limitations because Judwin was not suing Velsicol for exceeding the legal limits; instead, she was suing "to recover damages for lost income, rents, and profits," all of which were "due to tenant fears and adverse media coverage related to the chlordane application. Those damages arose in April 1987 because of the presence of chlordane, irrespective of the later detection of elevated interior concentrations amounting to 'contamination.'" *Id.* at 531.

The same analysis applies here. Any injury incurred from the J.P. Morgan defendants' alleged negligence in transferring the shares without plaintiffs' consent arose at the time of the transfer. Because Civelli admits that he knew by February 2014 that they had transferred the funds, the rule of discovery does not apply.[3]

B. Breach of Fiduciary Duty.

Plaintiffs ask us to find that the account at issue was a "special account," a fixture of Texas law that can create a fiduciary duty from a bank to a non-client. Such accounts are formed when "a customer deposits funds for a specific purpose and the bank agrees to be responsible for the safe-

---

[3] There is a conflict in this circuit over what standard the non-movant must meet to show that limitations has been tolled. *See Agenbroad v. McEntire,* 595 F. App'x 383, 385 n.1 (5th Cir. 2014) (citations omitted) ("We note that the precedent in this circuit is in conflict on the issue of whether to apply the Texas 'conclusively negate' summary judgment standard or the federal standard, which would not impose that burden on the moving party."). We do not reach this conflict, because defendants have satisfied both standards.

keeping, return, or disbursement of the same funds that were entrusted to it." *Bandy v. First State Bank, Overton*, 835 S.W.2d 609, 618–19 n.4 (Tex. 1992). Texas courts generally require explicit proof that the bank agreed to such a duty. *See Villarreal v. First Presidio Bank*, No. EP-15-CV-88-KC, 2017 WL 1063563, at *7 (W.D. Tex. 2017) (citing *Hudnall v. Tyler Bank & Trust Co.*, 458 S.W.2d 183, 186 (Tex. 1970)). The presumption is always that no such special account exists, and "[t]he burden is upon one who contends that the bank is his trustee or owes a duty to restrict the use of funds for certain purposes." *Citizens Nat'l Bank of Dall. v. Hill*, 505 S.W.2d 246, 248 (Tex. 1974).

Plaintiffs contend that JP Account 3 was transformed into a special account after its formation because it "was the result of 'more communications that modified antecedent considerations beyond what was 'initially conceived,' and representatives of the [J.P. Morgan defendants] engaged in objectively verifiable actions that mirrored that understanding." But plaintiffs' proffered evidence does not even come close to creating a genuine dispute of material fact over whether a special account was created.

Under Texas law, the only question is whether the J.P. Morgan defendants expressly accepted a duty to ensure the stocks were kept in trust for Civelli or Aster Panama. That could have been done by express agreement (via either the opening agreement of the account or subsequent communications) or by the bank's acceptance of a deposit that contained writing that set forth "by clear direction what the bank is required to do." *Id.* (citation omitted). Plaintiffs' burden is heavy, as Texas courts require a large amount of evidence to show that a bank has accepted such a duty.[4]

---

[4] *See S. Cent. Livestock Dealers, Inc. v. Sec. State Bank*, 551 F.2d 1346, 1348–49 (5th Cir. 1977); *Citizens First Nat'l Bank of Tyler v. Cinco Expl. Co.*, 540 S.W.2d 292, 295 (Tex. 1976); *Citizens Nat'l*, 505 S.W.2d at 247–49; *Quanah, A. & P. Ry. v. Wichita State Bank &*

No. 21-20618

Even after extensive discovery, the entirety of plaintiffs' evidence that the J.P. Morgan defendants agreed to accept a fiduciary duty to Civelli and Aster Panama is as follows:

(1) Mulacek told his Chase advisor ("Rahn") to move InterOil shares from one Chase account into an account that Mulacek called "PIE Group LLC #3, c/o Aster Capital S.A. 720-18542-2-RW8";

(2) The J.P. Morgan defendants generated account statements that referred to the account as "PIE Group, LLC Acct. #3 ASTER";

(3) Mulacek appears to refer to the above account as "Pie Group, LLC #3 Aster"[5];

(4) In August 2013, Rahn referred to the account as "Pie Group LLC special account for Aster Capital";

(5) In December 2013, Mulacek wrote to Rahn and referred to "PIE Group LLC (I have c/o of Aster)".

The J.P. Morgan defendants dispute the import of those statements, but the crux of their argument is that the documents establish no more than "what Appellees have asserted the entire time – [JP] account 3 was a brokerage account for PIE that Mulacek nicknamed the 'Aster' account to identify it from his other PIE accounts."

Defendants provide evidence that the customer agreement they signed with Mulacek when he opened his accounts stated that "the JPMS 'nature of services' will be solely to execute transactions and act as broker-

_____

*Trust Co.*, 93 S.W.2d 701, 705–09 (Tex. 1936); *cf. U.S. Fid. & Guar. Co. v. Adoue & Lobit*, 104 Tex. 379, 391–92 (1911).

[5] One digit is different in the account number Mulacek used, but it appears to be the same account.

dealer and custodian, and could not be modified except by 'a written instrument signed by an authorized representative of JPMorgan,'" and "only the undersigned has any interest in the Account(s) established pursuant to this agreement." They also contend that J.P. Morgan could not have had a special account at all, because it is a "brokerage firm, not a bank," and it "does not even offer 'special accounts,' because they would contradict its express contractual right as a broker-dealer to hold shares in its own name and as a bailee for itself with respect to margin accounts."

With this backdrop, no jury could find that the proffered statements and emails were sufficient evidence of intent from the J.P. Morgan defendants to show an express agreement that they "owe[d] a duty to restrict the use of the funds for certain purposes." *Citizens Nat'l*, 505 S.W.2d at 278. The district court therefore did not err in granting summary judgment in favor of the J.P. Morgan defendants.

## C. Conspiracy to Commit Theft.

Plaintiffs contend that the J.P. Morgan defendants conspired with Mulacek to steal Civelli's money because "[e]ach had knowledge of, agreed to and intended a common objective or course of action, the theft of Civelli and Aster Panama's shares in InterOil." Specifically, "Mulacek directed the [J.P. Morgan] defendants to transfer the shares to [Aster Brunei]. The [J.P. Morgan] defendants, complicit with Mulacek, made the transfer, knowing the transfer was not to the owner and not for the benefit of the owner." Plaintiffs fail to raise a genuine dispute as to any material fact regarding their conspiracy claim, and summary judgment was therefore proper.

In Texas, "[t]he essential elements [of civil conspiracy] are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d

932, 934 (Tex. 1983) (citing 15A C.J.S. *Conspiracy* § 1(2) (1967)). To establish a meeting of the minds, "there must be an agreement among [the alleged conspirators] and each must have a specific intent to commit the act." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 91 (Tex. 2003) (citation omitted).

Plaintiffs' theory appears to be that the "meeting of the minds" occurred when J.P. Morgan transferred the funds without plaintiffs' consent, because if defendants knew that the funds were meant to be held in trust for plaintiffs, then agreeing to transfer them without plaintiffs' consent was evidence of their mutual intent to steal from plaintiffs. But this fails for the reasons outlined above—even in a summary judgment posture, plaintiffs have not provided enough evidence to show that J.P. Morgan owed a fiduciary duty to the plaintiffs. Without such a duty, J.P. Morgan's transfer was nothing more than compliance with its client's request and, without further evidence, cannot evince an intent of minds to steal from Civelli and Aster Panama. The summary judgment on this claim was therefore correct.[6]

V.

Plaintiffs' final request raises a novel issue: whether a common law conspiracy suit predicated on a violation of the TTLA is considered a "suit brought under the TTLA" for purposes of attorneys' fees. TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b).

Civil suits generally follow the American Rule, under which each party pays its own attorneys' fees regardless of the outcome of the case. *See, e.g.,*

---

[6] Although the district court dismissed this claim as time-barred without reaching the merits, we can affirm on any basis supported by the record. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (citing *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014)).

*Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). But the TTLA includes a fee-shifting provision: "Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b). Thus, when the district court granted summary judgment in favor of the J.P. Morgan defendants for the conspiracy claim, defendants timely moved for attorneys' fees and costs under the TTLA.

The district court reasoned that under Texas law, it was clear that the J.P. Morgan defendants were prevailing parties, as they had "successfully defended . . . on summary judgment based on the statute of limitations having expired," and Texas courts have held that a prevailing party is defined as when a "plaintiff loses with prejudice, whether on the merits or for some other reason." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 148 (Tex. 2019). But whether defendants had prevailed in a suit under the TTLA was a novel issue. Interpreting the applicability of that state statute requires an *Erie* guess. We thus review *de novo. See Est. of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). *See also In re Glenn*, 900 F.3d 187, 189 (5th Cir. 2018).

To make an *Erie* guess, we determine "how the Texas Supreme Court would decide the issue." *Terry Black's BBQ, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (citing *Erie R.R. v. Thompkins*, 304 U.S. 64, 58 (1938)). That determination is based on

> (1) decisions of the Texas Supreme Court in analogous cases, (2) the rationales and analyses underlying Texas Supreme Court decisions on related issues, (3) dicta by the Texas Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of other states to which Texas courts look when formulating substantive law, and (7) other available sources, such as treatises and legal commentaries.

*Id.* (citing *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010)).

Plaintiffs appeal only whether the TTLA shifts fees for a conspiracy claim predicated on a TTLA claim, not the amount of the fees that the district court awarded. Plaintiffs remind us that in Texas, a party may not recover attorneys' fees absent an express statutory provision. The remainder of their argument is that the "plain language" of the statute makes clear that a conspiracy claim predicated on the TTLA is not a suit brought under the TTLA. For their part, the J.P. Morgan defendants point to the district court's reasoning: "Appellants' claim for conspiracy to violate the TTLA is a 'suit under this chapter' of the TTLA, because Appellants undertook to prove a direct violation of the TTLA when they brought a lawsuit for conspiracy to violate the TTLA . . . . After all, the statutory text refers broadly to a 'suit' under this chapter,' not a 'claim under this chapter.'"

In analogous situations, the Texas Supreme Court has spoken clearly of its view of conspiracy claims, stating, "Because civil conspiracy is a theory of vicarious liability, a lawsuit alleging a civil conspiracy that committed some intentional tort is still a 'suit for' that tort." *Agar*, 580 S.W.3d at 142. Although the court was referring to statutes of limitations, not attorneys' fees, the statement strongly suggests that the TTLA's fee-shifting provision should be interpreted to apply to conspiracy claims predicated on TTLA claims as well. Lower court decisions from Texas provide further support.

In *Brinson Benefits, Inc. v. Hooper*, the court noted, "Civil conspiracy is a derivative tort, and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." 501 S.W.3d 637, 643–44 (Tex. App.—Dallas 2016, no writ) (citing *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008)). Further, "if an underlying tort does not entitle a party to attorney's fees, that

party may not recover its attorney's fees for conspiracy to commit that tort." *Id.* (citation omitted). From those propositions, the court reasoned that "because civil conspiracy to commit theft is a derivative tort, [the plaintiff] could have succeeded on this claim only by proving [the defendants'] liability for the underlying tort of theft." *Id.*; *see also Natour v. Bank of Am.*, No. 4:21-CV-331, 2022 WL 3581396 at *5 (E.D. Tex.) (citing *Brinson* approvingly and holding that "fees related to the conspiracy claim are recoverable, because the conspiracy claim was premised on the . . . alleged theft.").[7]

We conclude that plaintiffs' argument ignores that this case involves a party that "prevailed in a suit under the TTLA" because the conspiracy allegations against the J.P. Morgan defendants expressly included and incorporated by reference the TTLA allegations. Thus, we conclude that the J.P. Morgan defendants and the district court correctly assessed the attorneys' fees' applicability here. We thus agree with the district court that, under Texas law, a party that prevails in a civil conspiracy claim predicated on a TTLA claim is entitled to attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b).

---

[7] One federal district court, *Traxxas, LP v. Dewitt*, held exactly the opposite, albeit in a hypothetical posture: "[T]he TTLA does not extend the recovery of fees to derivative claim tortfeasors, such as co-conspirators, who are not themselves defendants in a TTLA claim." 2016 WL 6892819, at *3. (E.D. Tex. Oct. 28, 2016). But because we are trying to glean what the Texas courts would have done, this holding is less instructive than are the Texas courts' holdings. *See Terry Black's BBQ*, 22 F.4th at 454.