# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2025

Lyle W. Cayce
Clerk

No. 24-10461

---

Jessica Clouse; Lindsay Heyman; Meghan Klein; Sydney Severson; Rebekah Tate; Marissa Jennings; Lauren Moore; Laura Kade,

*Plaintiffs—Appellants*,

*versus*

Southern Methodist University,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-141

---

Before Dennis, Haynes, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs are eight former student-athletes who sustained serious hip injuries between 2012 and 2015 while competing as members of the women's rowing team at Southern Methodist University ("SMU"). About three years after the last of the relevant diagnoses, Plaintiffs filed suit against SMU alleging their injuries were the result of negligent coaching, deficient medical

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

treatment, and discriminatory athletic practices. The district court found all claims barred by the applicable two-year statute of limitations. For the reasons that follow, we AFFIRM.

I

SMU established its all-female rowing team in 1999, and Doug Wright served as the program's head coach from 2000 until his termination in 2017. During the final seven years of Coach Wright's tenure, forty-four members of the women's rowing team reported hip pain and other related injuries. Of those, twenty were diagnosed with hip labral tears—a painful tear in the cartilage lining the rim of the hip socket.

These injured athletes included Plaintiffs Jessica Clouse, Meghan Klein, Lindsay Heyman, Sydney Severson, Rebekah Tate, Marissa Jennings, Lauren Moore, and Laura Kade. Plaintiffs rowed for SMU during various seasons between Fall 2010 and Fall 2015 and each experienced severe hip pain between late 2011 and Spring 2015. SMU referred them for evaluation and treatment at the Carrell Clinic in Dallas, Texas, or they sought care from private physicians. All were ultimately diagnosed with hip labral tears between Spring 2012 and Spring 2015. Most endured corrective surgery, but none continued to row after December 2015.

Following her graduation in the summer of 2017, Heyman met with a physical therapist at the Carrell Clinic. During that visit, she learned for the first time that SMU had enlisted one of the clinic's physical therapists—Dr. Tabatha Eaton—to conduct an audit of the women's rowing program in 2013 in response to a rising number of reported hip injuries. Dr. Eaton's audit identified significant risks of hip injury associated with the team's strength and conditioning regimen. She observed that the rowers demonstrated poor pelvic control and difficulty maintaining a neutral pelvis during workouts—deficiencies that, in her view, could contribute to labral tears. Dr. Eaton

recommended specific changes to mitigate these risks. However, SMU did not adopt her proposals.

Dr. Eaton's audit was not an isolated event. Beginning as early as 2010, SMU administrators, athletic directors, sports medicine staff, and rowing coaches had noted a rise in hip injuries among female rowers. Despite intermittent attempts to investigate and address the issue, including Dr. Eaton's audit, SMU took no sustained corrective action. In 2017, amid continued concerns, SMU terminated Coach Wright and his assistant coaching staff. Following these terminations, SMU reported no additional team-wide concerns related to hip injuries.

On January 19, 2018, Plaintiffs filed suit against SMU, asserting two claims: (1) gender-based discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; and (2) negligence under Texas law. They alleged SMU's substandard coaching, athletic training, and medical treatment—driven in part by systemic gender-based disparities—caused their hip injuries. SMU moved for summary judgment, arguing that Plaintiffs' claims were barred by the applicable statute of limitations. The district court agreed and entered judgment in favor of SMU. This timely appeal followed.

II

Our review is de novo. *Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A defendant moving for summary judgment on the statute of limitations bears the burden of proving that defense "conclusively." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 193 (5th Cir. 2013). In cases invoking a federal court's supplemental jurisdiction over

state-law claims, as is the case here, we apply federal procedural rules and the substantive law of the forum state. *Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 824 n.3 (5th Cir. 2024).

## III

The Title IX and state negligence claims in this case are governed by the same two-year statute of limitations set forth in § 16.003(a) of the Texas Civil Practice and Remedies Code. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) (negligence); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761 (5th Cir. 2015) (Title IX).[1] Section 16.003 provides that a person "must bring suit . . . not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Plaintiffs filed suit on January 19, 2018. Accordingly, to fall within the limitations period, Plaintiffs' (A) Title IX and (B) state negligence claims must have accrued on or after January 19, 2016, unless a recognized tolling doctrine applies.

## A

We begin with Plaintiffs' Title IX claims. Although the limitations period applicable to the Title IX claims at issue is borrowed from Texas law, the question of when those claims accrued is governed by federal law. *King-White*, 803 F.3d at 762. A federal claim accrues when the plaintiff is, or reasonably should be, aware of both the injury and its connection to the defendant's conduct. *Id.* (first citing *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010); and then citing *Piotrowski v. City of Houston*, 237 F.3d 567,

---

[1] In *King-White*, we explained that "[w]hen a federal statute does not contain a limitations period (as is the case for Title IX and § 1983), the settled practice is to borrow an 'appropriate' statute of limitations from state law." 803 F.3d at 758 (citations omitted). We then adopted Texas's two-year limitations period from Section 16.003 to the Title IX claims at issue there. *Id.* at 761.

576 (5th Cir. 2001)). A plaintiff need not be aware of the legal basis of her claim for the cause of action to accrue; it is enough that she knows or should know the underlying facts that would support such a claim. *Id.* (citing *Piotrowski*, 237 F.3d at 576). This does not require actual knowledge: the inquiry is satisfied where the circumstances "would lead a reasonable person to investigate further." *Id.* (quoting *Piotrowski*, 237 F.3d at 576).

The undisputed summary judgment record establishes that each Plaintiff sustained a hip injury while training and competing as a member of SMU's women's rowing team and was diagnosed with that injury prior to January 19, 2016. Each Plaintiff understood that her injury arose in connection with participation on the team. And each had ceased rowing for SMU before that date. Moreover, all Plaintiffs experienced instances of what they viewed as gender-based discrimination during their tenure on SMU's rowing team. These known facts and circumstances would have prompted a reasonable person to investigate SMU's conduct further and are sufficient to trigger the running of the statute of limitations. *King-White*, 803 F.3d at 762; *Spotts*, 613 F.3d at 574.

The gravamen of Plaintiffs' response is that they lacked sufficient information to link their injuries to SMU's discriminatory conduct until Heyman learned of Dr. Eaton's audit and SMU's failure to implement her recommendations. But this position blurs the line between "actual knowledge" of causation and circumstances that merely "lead a reasonable person to investigate further." *See King-White*, 803 F.3d at 762. Actual knowledge is not the rule. *Id.* While the discovery of Dr. Eaton's report and SMU's response (or lack thereof) provided further support for their claim, it was not necessary to establish the presumptive causal connection between Plaintiffs' hip injuries and SMU's discriminatory conduct for accrual. *Id.* That connection was established when Plaintiffs suffered injuries while rowing for SMU and knew they were injured while participating in an SMU-

sponsored rowing program.

Plaintiffs' attempted analogy to Title IX claims involving university liability for student-on-student sexual harassment does not alter this result. *See, e.g.*, *Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2022 WL 4715725 (W.D. Tex. Sept. 30, 2022); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Tex. 2017); *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452 (M.D. La. 2023). Because such claims demand proof that the university had actual knowledge of pervasive harassment but responded with deliberate indifference, *Pederson v. La. State Univ.*, 213 F.3d 858, 882 (5th Cir. 2000), courts have delayed accrual where the university's role in causing the harm was not immediately apparent to the victim, *see Hernandez*, 274 F. Supp. 3d at 617 ("Plaintiff was sexually assaulted by another student. . . . Plaintiff therefore had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault."). Here, however, Plaintiffs were injured while training under SMU's supervision, attributed those injuries to their experience on the rowing team, and contemporaneously perceived unequal treatment on the basis of sex. That information triggered the running of the limitations period. *See King-White*, 803 F.3d at 761–62.

Plaintiffs' reliance on the continuing violations doctrine fares no better. That doctrine permits a plaintiff to pursue otherwise time-barred claims only when the challenged discrimination is not a series of isolated acts, but rather a continuing pattern of related conduct that extends into the limitations period. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). Plaintiffs rely on evidence that Tate, Heyman, Clouse, Klein, Severson, and Jennings "continued to experience discrimination following their medical disqualification[s]" until their "graduations in May 2016 or May 2017." But each Plaintiff ceased rowing for SMU before January 19, 2016, and Plaintiffs do not explain how their *earlier* hip injuries suffered while rowing for SMU are causally connected to these *later* acts of discrimination. That cessation

No. 24-10461

"sever[ed] the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). The continuing violations doctrine does not apply, and the Title IX claims remain untimely.[2]

B

We turn now to Plaintiffs' state negligence claims. Under Texas law, a cause of action for negligence accrues when the defendant's wrongful conduct causes the plaintiff to suffer a legal injury. *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 814 (Tex. 2021) (citing *Am. Star Energy & Mins. Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015)). This "legal-injury rule" provides that the limitations period begins to run even if the claimant does not yet know that a legal injury has occurred, has not yet experienced the full extent of the injury, or cannot yet ascertain the resulting damages. *Id.* Once a legal injury has occurred, the clock begins. *See id.*; *Stowers*, 457 S.W.3d at 430.

As discussed above, the undisputed summary judgment evidence reflects that Plaintiffs both sustained and were diagnosed with hip labral tears prior to January 19, 2016. Under Texas's legal-injury rule, that is when their claims accrued. *See Regency Field Servs.*, 622 S.W.3d at 814; *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). It makes no difference that four Plaintiffs—Severson, Heyman, Klein, and Tate—were medically disqualified from the rowing team or underwent

---

[2] The district court addressed whether Appellants' Title IX claims were timely by application of the discovery rule and fraudulent concealment doctrine. Plaintiffs do not raise fraudulent concealment for purposes of their Title IX claim. And though they use the phrase "discovery rule" twice in their argument concerning when their Title IX claim accrued, they do not explain how the rule applies. Both arguments are forfeited. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021).

7

surgery after that date. While those events flow from their injuries, they are not the legal injuries themselves. The operative injuries for purposes of accrual are the labral tears that, by Plaintiffs' own account, were caused by allegedly negligent coaching, training, or medical care. Once those injuries occurred, the limitations period began to run. *Regency Field Servs.*, 622 S.W.3d at 814.

The continuing-tort theory Plaintiffs invoke likewise fails. This narrow exception to the legal-injury rule permits accrual to be delayed only when wrongful conduct occurs repeatedly over time and continues to cause injury throughout the period of repetition. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592–93 (Tex. 2017). But here, the summary judgment evidence confirms that each of the six Plaintiffs invoking that doctrine—Tate, Heyman, Clouse, Klein, Severson, and Jennings—ceased participating in SMU's rowing program before January 19, 2016. No evidence suggests that they were exposed to any new or continuing injury from SMU's allegedly negligent conduct after that point. That they remained enrolled at the university until May 2016 or 2017 does not suffice to extend the limitations period. Once their involvement in the rowing program ended, so too did their exposure to the conduct that allegedly caused their injuries. As the Texas Supreme Court has made clear, "the fact that damage may continue to occur for an extended period after accrual does not prevent limitations from starting to run." *Id.* at 593 (quotation and citation omitted). The continuing-tort doctrine does not support delaying accrual in this case.

In sum, Plaintiffs' negligence claims accrued prior to January 19, 2016, under both the legal-injury rule and, to the extent it applies, the continuing-tort doctrine. Their claims are presumptively barred by the applicable statute of limitations as a result. Plaintiffs contend, however, that two exceptions recognized under Texas law operate to delay or toll the limitations period—the discovery rule and the doctrine of fraudulent concealment. *See Valdez v.*

*Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) (citing *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927, 929–30 (Tex. 2011)). Neither exception applies.

To begin, the discovery rule is a narrow exception reserved for "exceptional cases" and its applications "should be few and narrowly drawn." *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022) (first quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006); and then quoting *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996)). The rule is limited to circumstances in which the plaintiff's injury is, by its nature, "inherently undiscoverable;" that is, unlikely to be discovered within the prescribed limitations period despite the exercise of reasonable diligence. *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023) (quoting *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 146 (Tex. 2019)). This inquiry is categorical, not case-specific: the question is whether the type of injury alleged is the kind that could ordinarily be discovered through the exercise of reasonable diligence. *Id.* (citing *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018)).

The injuries at issue here—hip labral tears sustained during athletic training—are not of the type that Texas courts have deemed inherently undiscoverable.[3] These are conventional physical injuries that were both felt and diagnosed at or near the time they occurred. The summary judgment record establishes that each Plaintiff was aware of her injury and understood

---

[3] *See, e.g.*, *Childs v. Haussecker*, 974 S.W.2d 31, 43 (Tex. 1998) (occupational disease from inhaling sand particles characterized by a slowly progressive fibrosis of the lungs over twenty-three years); *Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977) (negligent hemorrhoidectomy damaged nerves and muscles of plaintiff's rectum, manifesting in loss of bowel control); *J.K. & Susie L. Wadley Rsch. Inst. & Blood Bank v. Beeson*, 835 S.W.2d 689, 694–95 (Tex. App.—Dallas 1992, writ denied) (onset of AIDS several years after negligent blood transfusion); *cf. Howard v. Fiesta Tex. Show Park, Inc.*, 980 S.W.2d 716, 722 (Tex. App.—San Antonio, pet. denied 1998) (discovery rule inapplicable where plaintiff was aware of injury when it occurred, even if severity was learned later).

that it arose in connection with participation in SMU's rowing program. That a plaintiff later acquired additional information—such as SMU's failure to adopt internal recommendations to reduce injury risk—does not render the initial injury undiscoverable. *See Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 489 (5th Cir.), *cert. denied sub nom. Civelli v. JPMorgan Chase Sec., L.L.C.*, 143 S. Ct. 2585 (2023) ("[T]he discovery rule tolls limitations only until a claimant learns of a wrongful injury . . . even if the claimant does not yet know: the specific cause of the injury; the party responsible for it, the full extent of it; or the chances of avoiding it." (citation omitted)). Because the type of injury at issue is neither obscure nor categorically resistant to detection, this case does not fall within the narrow bounds of the discovery rule. The limitations period is not tolled on this basis.

The same is true of the fraudulent concealment doctrine. Under Texas law, even when the limitations period has otherwise expired, a plaintiff may avoid summary judgment by raising a genuine dispute of material fact as to whether the defendant fraudulently concealed the existence of the cause of action. *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021). This equitable doctrine estops a defendant from asserting a limitations defense where the defendant had a duty to disclose material facts but instead concealed them, thereby preventing the plaintiff from learning of the claim. *King-White*, 803 F.3d at 764 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)). To invoke this doctrine, the plaintiff bears the burden of showing that the defendant was under a duty to disclose the allegedly concealed information. *Id.*; *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 366 (5th Cir. 2000). While Plaintiffs characterize the relationship between student-athletes and the university as one of special trust or confidence, they cite no authority that presumes the existence of a fiduciary duty in this context, nor imposes a disclosure obligation concerning internal athletic or medical evaluations. Without more, the assertion that SMU failed to disclose its internal review

No. 24-10461

of injury patterns and the findings of Dr. Eaton's 2013 audit does not support the application of the fraudulent concealment doctrine.

*     *     *

At bottom, Plaintiffs' Title IX and negligence claims accrued prior to January 19, 2016, and no tolling doctrine applies. So, the statute of limitations required the district court to enter summary judgment.

IV

For the foregoing reasons, we AFFIRM the district court's judgment.